UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------

DARREN CESARIO, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

US HEALTH AND WELLBEING, LLC d/b/a LIQUID I.V. and WELLBEING COLLECTIVE,

Defendant.

Case No. ___________

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Darren Cesario ("Plaintiff" or "Mr. Cesario"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, Robert Schonfeld, Esq. of JOSEPH & NORINSBERG, LLC, brings this putative Class Action Complaint against U.S. Health and Wellbeing, LLC, d/b/a Liquid I.V. & Wellbeing Collective ("Liquid I.V." or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's failure to ensure that its e-commerce Website, www.liquid-iv.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff DARREN CESARIO is a legally blind resident of New York County who suffers from advanced Retinitis Pigmentosa, a progressive hereditary retinal dystrophy that causes severe peripheral field loss ("tunnel vision"), impaired night vision, decreased contrast sensitivity, and progressive constriction of the functional visual field. As documented in the medical certification issued by Dr. Eleonora Orloff, O.D. of Bronx Eye Associates on May 15, 2025, Mr. Cesario's visual field loss meets both federal and New York State criteria for legal blindness. Dr. Orloff confirms that Mr. Cesario's condition is permanent, incurable, and significantly impairs his

ability to visually interpret printed or digital information without assistive technology. (See Exhibit A, Dr. Orloff Medical Certification: "These findings meet the federal and New York State criteria for legal blindness… Mr. Cesario's visual limitations are permanent and significantly impact his ability to visually interpret printed or digital information without assistive technology.")

2. As a person living with a progressive, incurable retinal degenerative disease, Plaintiff is acutely attentive to his overall health and physical well-being. Managing a chronic condition that progressively diminishes one of his primary senses requires ongoing vigilance about nutrition, hydration, and cellular health — concerns that are heightened for individuals whose daily independence already depends on careful self-management. Proper hydration plays a fundamental role in maintaining cognitive clarity, cellular function, and overall wellness. Because of this heightened awareness of his health needs, Plaintiff has a genuine and ongoing interest in acquiring science-backed hydration and electrolyte supplement products — including the Liquid I.V. Hydration Multiplier formulations that Defendant markets and sells through its Website — capable of delivering enhanced hydration efficiency through Defendant's proprietary Cellular Transport Technology ("CTT"). Additionally, because Plaintiff cannot visually inspect product packaging on retail store shelves — cannot independently read ingredient lists, nutritional facts panels, flavor descriptions, allergen disclosures, or dosage instructions printed on individual packets — accessible online shopping is his primary means of independently researching, comparing, selecting, and purchasing consumable health products.

3. Plaintiff relies exclusively on screen-reading software, including NonVisual Desktop Access ("NVDA"), to navigate digital interfaces, read product information, and complete online transactions. NVDA can only interpret websites that are properly coded according to widely accepted accessibility standards, including the Web Content Accessibility Guidelines ("WCAG")

2.1 Level AA.

4. Defendant US HEALTH AND WELLBEING, LLC (d/b/a "Liquid I.V." and "Wellbeing Collective") is a consumer health and wellness company and a subsidiary of Unilever PLC. Through its commercial website, www.liquid-iv.com, which it operates as the brand's exclusive direct-to-consumer storefront, Defendant sells Liquid I.V. hydration multiplier drink mixes, electrolyte powder packets, immune support supplements, energy and sleep formulas, and related health and wellness products directly to consumers throughout the United States, including residents of the State and City of New York. The Website functions as a sales establishment within the meaning of 42 U.S.C. § 12181(7) and is the primary retail channel through which consumers browse, research, compare, and purchase Liquid I.V. products. Defendant also operates commercial websites for its other portfolio brands, including Olly, Onnit, SmartyPants Vitamins, and Welly, confirming that Defendant is a sophisticated commercial enterprise with the resources and technical capacity to design and maintain accessible digital properties.

5. This action arises from Defendant's failure to make its digital properties accessible to Plaintiff DARREN CESARIO and all others similarly situated, which violates the effective communication and equal access requirements of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189. These provisions were enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" by "assur[ing] equality of opportunity, full participation, independent living, and economic self-sufficiency."

6. Although styled as an individual action, the injunctive relief that Plaintiff seeks will inure to the benefit of an estimated 2.3 percent of the United States population who report having a visual disability, and to Defendant, who will extend its market reach to this population.

7. For this significant portion of Americans, accessing websites, mobile applications, and other information via their smartphones has become a necessity, not a convenience. In contrast to the largely stationary internet of the early 2000s, Americans today are increasingly connected to the world of digital information while "on the go" via smartphones.

8. Indeed, a growing share of Americans use smartphones as their primary means of online access at home. Today roughly one-in-five American adults are "smartphone-only" internet users — meaning they own a smartphone, but do not have traditional home broadband service.

9. The growth of smartphone usage is rivaled only by the myriad ways in which users can harness the capabilities of the internet for the betterment of their lives through education, employment, entertainment, commerce, and countless other pursuits.

10. The U.S. Chamber of Commerce has documented consumers' increasing reliance on mobile platforms to shop online: The average consumer spends more than $1,700 per year on online shopping, a number that's continuing to rise. The convenience, affordability and ability to compare prices with ease has led more and more customers to visit e-commerce sites before heading to a brick-and-mortar location. New research by Leanplum found that 95% of consumers will buy at least half of their gifts online. Shoppers, especially millennials and Gen Zers, favor the convenience and the great offers and discounts associated more with shopping online than visiting a brick-and-mortar location. It's these groups that are driving e-commerce retailers to be strategic with their website design. The Leanplum survey found that 80% of respondents shop on their mobile devices.

11. Plaintiff DARREN CESARIO is a resident of New York County and is legally blind due to Retinitis Pigmentosa, a progressive retinal degenerative disease that causes severe visual field constriction and markedly reduced peripheral vision.

12. Due to his permanent and progressive visual impairment, Mr. Cesario relies exclusively on screen-reading software, including NonVisual Desktop Access (NVDA), to navigate digital interfaces, read product information, and complete online transactions. His reliance on assistive technology is essential to his ability to access goods and services on equal terms with sighted consumers. NVDA's ability to interpret properly coded websites is critical to his independence, safety, and daily functioning.

13. This is a civil rights action arising from Defendant's failure to design, construct, maintain, and operate its Website to be fully accessible to and independently usable by Plaintiff and other blind and visually impaired persons who use screen-reading software. Defendant's failures violate Title III of the ADA, 42 U.S.C. §§ 12181 et seq., the NYSHRL, the NYCRL, the NYCHRL, and the Declaratory Judgment Act.

14. Defendant is a "place of public accommodation" as defined by the ADA because it owns, operates, and controls the commercial e-commerce website through which Defendant sells goods and services to the general public throughout the United States, including within the State and City of New York. The Website constitutes a sales establishment within the meaning of 42 U.S.C. § 12181(7).

15. Defendant's Website contains pervasive, systemic accessibility barriers that deny blind and visually impaired users full and equal access to the goods, services, information, and purchasing functions available to sighted users. These barriers prevent Plaintiff and other legally blind individuals from independently browsing, researching, comparing, and purchasing products, thereby denying them the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages, and accommodations in violation of applicable federal, state, and city law.

## **JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as this action arises under Title III of the ADA, 42 U.S.C. §§ 12181 et seq., and 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act).

17. This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as Plaintiff's federal claims.

18. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District, accessed the Website from this District, and suffered the injuries alleged herein in this District. Venue is further proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims, including Plaintiff's multiple attempts to access the Website using screen-reading software and his encounters with accessibility barriers that denied him full and equal access to Defendant's goods and services, occurred within this District.

19. Defendant is subject to personal jurisdiction in this District. Although Defendant US Health and Wellbeing, LLC is, upon information and belief, organized under the laws of the State of Delaware, Defendant is subject to specific personal jurisdiction in New York pursuant to N.Y. C.P.L.R. § 302(a)(1) because Defendant transacts substantial business within the State and City of New York. Specifically, Defendant operates a commercial e-commerce website that is accessible to, directed at, and actively marketed toward New York residents; ships Liquid I.V. products directly to customers in New York; derives substantial revenue from consumers in this District; and sells its products through major retail outlets located throughout New York, including Target, CVS, Costco, Walmart, and other brick-and-mortar stores. Plaintiff, a New York County resident, accessed the Website from within this District and suffered injury in this District. The

exercise of jurisdiction comports with due process because Defendant has purposefully availed itself of the privilege of conducting business in New York, and Plaintiff's claims arise directly from Defendant's New York-directed commercial activities. See Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158 (2d Cir. 2010); Reed v. 1-800-Flowers.com, Inc., 327 F. Supp. 3d 539 (E.D.N.Y. 2018); Andrews v. Blick Art Materials, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); Romero v. 88 Acres Foods, Inc., 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

## PARTIES

20. Plaintiff DARREN CESARIO is a legally blind individual residing in New York, New York 10027, within the Southern District of New York.

21. As documented in a medical certification dated May 15, 2025, completed by Dr. Eleonora Orloff, O.D., of Bronx Eye Associates, located at 665 Pelham Parkway North, Bronx, New York 10467, Mr. Cesario has been diagnosed with Retinitis Pigmentosa. Retinitis Pigmentosa is a progressive, hereditary retinal degenerative disease that causes the gradual destruction of photoreceptor cells in the retina, resulting in severe visual field loss, night blindness, decreased contrast sensitivity, and ultimately profound central visual impairment. Mr. Cesario has been registered with the New York State Commission for the Blind and Visually Handicapped ("CBVH").

22. As a direct consequence of his disability, Plaintiff is substantially limited in the major life activity of seeing and is unable to perceive, interpret, or interact with visual content on websites and digital platforms without the assistance of screen-reading technology.

23. Plaintiff uses NVDA (NonVisual Desktop Access), a widely recognized free, open-source screen reader for Microsoft Windows, as his primary assistive technology to access websites and digital content. NVDA converts on-screen text, images (when properly labeled with

alternative text), links, buttons, form fields, and other interactive elements into synthesized speech, enabling blind and visually impaired users to navigate and interact with websites.

24. For NVDA to function effectively, websites must comply with the Web Content Accessibility Guidelines ("WCAG") 2.1, at minimum Level AA, as published by the World Wide Web Consortium ("W3C") and referenced by the United States Department of Justice for compliance with ADA Title III. Compliance requires, inter alia, that all images contain descriptive alternative text, all form controls be properly labeled, all interactive elements be keyboard operable and have accessible names, sufficient color contrast exist between text and background, headings be used to structure content, and ARIA roles and properties be implemented correctly.

25. Defendant US HEALTH AND WELLBEING, LLC is a limited liability company organized and existing, upon information and belief, under the laws of the State of Delaware, and operating under the trade names "Liquid I.V." and "Wellbeing Collective." Defendant is a subsidiary of Unilever PLC and operates as a consumer health and wellness company that markets, distributes, and sells hydration, nutrition, and wellness products under the Liquid I.V. brand, as well as products under its other portfolio brands, including Olly, Onnit, SmartyPants Vitamins, and Welly. Defendant owns, operates, and controls the commercial e-commerce Website located at www.liquid-iv.com, and accordingly bears responsibility for the accessibility of that Website under the ADA and applicable state and city law.

26. Through its Website at www.liquid-iv.com, Defendant sells its full line of Liquid I.V. products, including the Hydration Multiplier Electrolyte Drink Mix, the Sugar-Free Hydration Multiplier, the Hydration Multiplier + Immune Support, the Energy Multiplier, the Sleep Multiplier, and related bundles, subscriptions, and accessories, to consumers throughout the United States, including New York.

27. The Website functions as Defendant's exclusive direct-to-consumer retail channel for Liquid I.V. branded products and is actively marketed to consumers nationwide. Defendant derives substantial revenue from online sales and ships products directly to customers in the State and City of New York.

## STATEMENT OF FACTS

### A. Plaintiff's Disability and Use of Assistive Technology

28. Plaintiff DARREN CESARIO is an active online consumer who regularly uses his NVDA screen reader to browse, research, compare, and purchase products from e-commerce websites. Mr. Cesario maintains a genuine, continuing interest in purchasing high-quality hydration and wellness products online, including electrolyte supplement formulations that support his overall health and daily functioning as a legally blind individual with Retinitis Pigmentosa.

29. As a person living with a progressive, incurable retinal degenerative disease, Plaintiff is acutely attentive to his overall health and physical well-being. Managing a chronic condition that progressively diminishes one of his primary senses requires ongoing vigilance about nutrition, hydration, and cellular health — concerns that are heightened for individuals whose daily independence already depends on careful self-management. Proper hydration plays a fundamental role in maintaining cognitive clarity, cellular function, and overall wellness. Because of this heightened awareness of his health needs, Plaintiff has a genuine and ongoing interest in acquiring science-backed hydration and electrolyte supplement products — including the Liquid I.V. Hydration Multiplier formulations that Defendant markets and sells through its Website — capable of delivering enhanced hydration efficiency through Defendant's proprietary Cellular

Transport Technology ("CTT"). Additionally, because Plaintiff cannot visually inspect product packaging on retail store shelves — cannot independently read ingredient lists, nutritional facts panels, flavor descriptions, allergen disclosures, or dosage instructions printed on individual packets — accessible online shopping is his primary means of independently researching, comparing, selecting, and purchasing consumable health products.

**B. Plaintiff's Attempted Access to the Liquid I.V. Website and Barriers Encountered**

30. Plaintiff first learned of Liquid I.V. through television and online advertising, where the Hydration Multiplier product line was promoted for its science-backed hydration formula and endorsements by athletes and health professionals. Motivated by his genuine interest in obtaining high-quality hydration products that support his daily health management as a legally blind individual, Mr. Cesario visited the Liquid I.V. Website at www.liquid-iv.com to research and purchase Liquid I.V. products.

31. On January 10, 2026, Mr. Cesario first accessed the Liquid I.V. Website using his NVDA screen reader with the intent to browse and purchase the Hydration Multiplier Electrolyte Drink Mix. On this visit, NVDA encountered critical accessibility barriers: (a) multiple interactive elements assigned ARIA roles that marked their child elements as presentational — effectively hiding focusable controls from the accessibility tree — caused NVDA to fail to announce tab navigation controls on the homepage and product pages, leaving Plaintiff unable to determine which product category or flavor option was selected (WCAG 2.1 A 4.1.2); (b) elements marked with aria-hidden="true" contained focusable content, including links and buttons, meaning Plaintiff could navigate to these controls via the Tab key but NVDA announced only silence, providing no indication of what element had received focus or what action it would perform (WCAG 2.1 A 4.1.2); and (c) CSS animations running for effectively infinite durations

(animation-duration values exceeding 2.1 billion milliseconds) with no mechanism for the user to pause, stop, or hide the moving content, interfering with NVDA's ability to maintain a stable reading position on the page (WCAG 2.1 A 2.2.2). Mr. Cesario was unable to independently navigate to product pages, review product descriptions, compare flavors and formulations, or complete his purchase.

32. On January 11, 2026, Mr. Cesario returned to the Liquid I.V. Website to make a second attempt to purchase the Hydration Multiplier and to research the Sugar-Free Hydration Multiplier and the Hydration Multiplier + Immune Support. On this visit, the identical barriers persisted: (a) NVDA again encountered focusable elements hidden from the accessibility tree by presentational ARIA roles, preventing Plaintiff from identifying or activating product selection tabs; (b) aria-hidden regions continued to contain focusable interactive controls that were silent to screen-reader output; and (c) the infinite-duration CSS animations continued to disrupt NVDA's reading flow. In addition, Plaintiff encountered further barriers across product listing and detail pages, including elements that NVDA could not meaningfully announce due to missing accessible names, preventing Plaintiff from distinguishing between product options or understanding the function of interactive controls. Mr. Cesario was again unable to complete any purchase.

33. On March 15, 2026, Mr. Cesario made a third visit to the Liquid I.V. Website, again intending to purchase the Hydration Multiplier Electrolyte Drink Mix and the Hydration Multiplier + Immune Support. On this visit, all previously encountered barriers remained unremediated. The ARIA presentational-role violations, the aria-hidden focusable-content violations, the infinite-duration animation violations, and the missing accessible name violations continued to prevent Plaintiff from independently browsing product pages, reviewing nutritional information and ingredient lists, selecting flavors and quantities, and completing a purchase. Mr.

Cesario abandoned his purchase attempt for a third time due to Defendant's ongoing failure to make the Website accessible.

34. Despite multiple good-faith attempts over a period of more than two months, Mr. Cesario has been unable to independently browse, research, compare, or purchase any product on the Liquid I.V. Website due to the pervasive and recurring accessibility barriers described above. These barriers are not isolated defects on a single page; they are systemic failures embedded in the Website's code and design that affect product pages, navigation menus, and interactive purchasing elements throughout the Website.

**C. Additional Accessibility Barriers Identified Through Expert Analysis**

35. A SortSite accessibility validation report was obtained for the Liquid I.V. Website at www.liquid-iv.com on May 1, 2026. SortSite is a widely recognized automated accessibility testing tool that evaluates websites against the Web Content Accessibility Guidelines (WCAG) 2.1 at Levels A, AA, and AAA, as well as Section 508 of the Rehabilitation Act. The report scanned 1,534 pages and files on Defendant's Website.

36. The SortSite report identified fourteen (14) distinct Level A WCAG 2.1 violations across 515 pages of the Website, as well as Level AA violations across 551 pages. The Website scored worse than average on accessibility benchmarks, with 36 percent of pages containing accessibility issues. The Level A violations — the most fundamental tier of accessibility compliance — include, but are not limited to: (a) elements with ARIA roles that hide child elements as presentational while those children contain focusable interactive controls, violating WCAG 2.1 Success Criterion 4.1.2 (Name, Role, Value), identified on the homepage (www.liquid-iv.com), the Confluence page (www.liquid-iv.com/pages/confluence), and the Product Donation page (www.liquid-iv.com/pages/product-donation); (b) elements with aria-

hidden="true" that contain focusable content such as links, buttons, inputs, selects, and textareas, which causes a screen reader user to tab to a control and hear only silence, violating WCAG 2.1 Success Criterion 4.1.2, identified on the same pages; (c) CSS animations with durations exceeding 2.1 billion milliseconds (effectively infinite) without any mechanism for the user to pause, stop, or disable them, violating WCAG 2.1 Success Criterion 2.2.2 (Pause, Stop, Hide); and (d) additional Level A violations affecting navigation, product pages, and interactive purchasing functions across the Website. The Level AA violations include insufficient color contrast between text and background elements, and visual labels that do not match accessible names, further impeding screen reader users from navigating and interacting with the Website.

37. The SortSite report findings corroborate the accessibility barriers that Plaintiff personally encountered during his January 10, 2026, January 11, 2026, and March 15, 2026 visits to the Website. The barriers identified by automated testing are consistent with — and in many instances identical to — the barriers that prevented Plaintiff from navigating the Website, reading product information, and completing purchases using his NVDA screen reader. Exhibit B.

**D. Standing**

38. Plaintiff has Article III standing to bring this action. First, Plaintiff has suffered a concrete and particularized injury-in-fact: he was denied the ability to independently access, browse, research, compare, and purchase hydration and wellness products on Defendant's Website due to the accessibility barriers described herein. This denial of full and equal access constitutes an injury under the ADA, the NYSHRL, the NYCRL, and the NYCHRL.

39. Second, Plaintiff's injury is fairly traceable to Defendant's conduct. Defendant owns, operates, and controls the Website and is responsible for its design, coding, and maintenance. The accessibility barriers identified by Plaintiff and corroborated by the SortSite

accessibility validation report are the direct result of Defendant's failure to design and maintain the Website in conformance with WCAG 2.1 Level AA and applicable accessibility standards.

40. Third, Plaintiff's injury is redressable by a favorable decision. Injunctive relief requiring Defendant to remediate the Website and bring it into compliance with WCAG 2.1 Level AA would eliminate the barriers Plaintiff encountered and enable him to access the Website independently using his NVDA screen reader.

41. Plaintiff has a bona fide intent to return to the Liquid I.V. Website to browse and purchase products once the accessibility barriers are removed. Mr. Cesario's interest in Defendant's hydration and wellness products is genuine and ongoing: he has a continuing need for high-quality electrolyte and hydration supplements to support his overall health, and Defendant's Website is the exclusive direct-to-consumer retail channel for Liquid I.V. branded products. Plaintiff's prior visits to the Website on January 10, 2026, January 11, 2026, and March 15, 2026 demonstrate a pattern of repeated, good-faith attempts to access the Website, and his inability to complete purchases was caused solely by the accessibility barriers on the Website, not by any lack of interest in Defendant's products. Plaintiff will return to the Website to test whether the barriers have been removed and, if they have, to complete his intended purchases. See Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68 (2d Cir. 2022).

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action on behalf of himself , and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of all legally blind individuals in the United States who have attempted to access Defendant's website and, as a result of Defendant's failure to design, construct, and maintain the website in an accessible manner, were denied equal access to the goods,

services, software, and information offered thereon

43. Plaintiff also seeks certification of a New York subclass consisting of all legally blind individuals residing in the State of New York who have attempted to access Defendant's website and were denied equal access to the goods, services, software, and information offered thereon.

44. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. The precise number of Class members is unknown to Plaintiff but is believed to be in the thousands, given the prevalence of blindness and visual impairment in the United States and the widespread use of Defendant's website by consumers seeking to purchase camera equipment and download software.

45. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's website contains barriers that prevent blind and visually impaired individuals from accessing its content using screen-reading software;
- Whether Defendant's failure to make its website accessible violates Title III of the ADA;
- Whether Defendant's conduct violates the New York State Human Rights Law;
- Whether Defendant's conduct violates the New York City Human Rights Law;
- Whether Defendant has adopted adequate policies and practices to ensure ongoing website accessibility; and
- Whether injunctive relief is warranted to require Defendant to make its website fully accessible to blind and visually impaired individuals.

46. Plaintiff's claims are typical of the claims of the members of the Class and Subclass because Plaintiff, like all Class members, is legally blind, attempted to access Defendant's website

using screen-reading software, and was denied equal access due to the same or similar accessibility barriers. Plaintiff's injuries are typical of those sustained by the Class and Subclass, and Plaintiff seeks the same injunctive relief on behalf of all members.

47. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has no interests that are antagonistic to the interests of the Class or Subclass, and Plaintiff is committed to vigorously prosecuting this action. Plaintiff has retained counsel experienced in disability rights litigation, class actions, and federal civil rights enforcement.

48. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible website without a policy or plan to ensure accessibility, thereby subjecting all blind and visually impaired individuals to the same discriminatory barriers.

49. Certification under Rule 23(b)(2) is appropriate because Defendant has acted and continues to act in a manner that is generally applicable to the Class and Subclass by maintaining a website that is inaccessible to blind and visually impaired individuals. The relief sought by Plaintiff — including injunctive relief requiring Defendant to make its website accessible — will benefit all members of the Class and Subclass.

## FIRST CAUSE OF ACTION
**Violation of Title III of the Americans with Disabilities Act**
**42 U.S.C. §§ 12181 et seq.**

50. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

51. Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations

of any place of public accommodation." 42 U.S.C. § 12182(a).

52. Defendant's Website, www.liquid-iv.com, constitutes a place of public accommodation within the meaning of 42 U.S.C. § 12181(7), as it is a sales establishment through which Defendant offers goods and services to the general public throughout the United States, including within the State and City of New York.

53. Defendant has violated, and continues to violate, Title III of the ADA by failing to design, construct, maintain, and operate its Website to be fully accessible to and independently usable by Plaintiff and other blind and visually impaired individuals who use screen-reading software. Defendant's accessibility barriers constitute discrimination under 42 U.S.C. § 12182(b)(1) and 42 U.S.C. § 12182(b)(2)(A)(ii) and (iii), including the failure to make reasonable modifications to policies, practices, and procedures and the failure to take steps necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently.

54. Defendant has further violated 42 U.S.C. § 12182(b)(2)(A)(iii) by failing to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, including making its Website compatible with screen-reading software.

55. As a direct and proximate result of Defendant's violations of the ADA, Plaintiff has suffered and continues to suffer harm, including the denial of full and equal access to Defendant's goods, services, privileges, advantages, and accommodations. Plaintiff is entitled to injunctive relief requiring Defendant to bring its Website into compliance with WCAG 2.1 Level AA, as well as attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 12205.

**SECOND CAUSE OF ACTION**

**Violation of the New York State Human Rights Law**

**N.Y. Exec Law§§ 290 et seq**

56. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

57. The New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(2)(a), makes it unlawful for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation, resort, or amusement, because of the disability of any person, directly or indirectly, to refuse, withhold from, or deny to such person any of the accommodations, advantages, facilities, or privileges thereof.

58. Defendant's Website constitutes a place of public accommodation within the meaning of N.Y. Exec. Law § 292(9).

59. Defendant has violated and continues to violate the NYSHRL by maintaining an inaccessible Website that denies blind and visually impaired individuals, including Plaintiff, full and equal access to Defendant's goods, services, facilities, privileges, advantages, and accommodations. Defendant's conduct constitutes unlawful disability discrimination in violation of N.Y. Exec. Law § 296(2).

60. As a direct and proximate result of Defendant's violations of the NYSHRL, Plaintiff has suffered and continues to suffer harm. Plaintiff is entitled to compensatory damages, injunctive relief, attorneys' fees, costs, and all other relief available under the NYSHRL.

**THIRD CAUSE OF ACTION**

**Violation of the New York Civil Rights Law**

**N.Y. Civ. Rights Law §§ 40 et seq.**

61. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

62. The New York Civil Rights Law ("NYCRL"), N.Y. Civ. Rights Law § 40, guarantees to all persons within the jurisdiction of the State of New York full and equal enjoyment of any place of public accommodation, resort, or amusement, subject only to the conditions established by law applicable alike to all persons.

63. Defendant's Website constitutes a place of public accommodation within the meaning of the NYCRL.

64. Defendant has violated and continues to violate the NYCRL by denying Plaintiff and other blind and visually impaired individuals full and equal enjoyment of Defendant's Website and the goods and services offered through it, on account of their disability.

65. As a direct and proximate result of Defendant's violations of the NYCRL, Plaintiff has suffered harm and is entitled to all remedies available under N.Y. Civ. Rights Law § 40-d, including a civil penalty, compensatory damages, injunctive relief, and attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

**Violation of the New York City Human Rights Law**

**N.Y.C. Admin. Code §§ 8-101 et seq.**

66. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

67. The New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(4), makes it unlawful for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation to refuse, withhold from, or deny to any person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation, directly or indirectly, because of any person's actual or perceived disability.

68. Defendant's Website constitutes a place or provider of public accommodation within the meaning of N.Y.C. Admin. Code § 8-102.

69. Defendant has violated and continues to violate the NYCHRL by maintaining an inaccessible Website that denies blind and visually impaired persons, including Plaintiff, the full and equal enjoyment of Defendant's goods, services, and accommodations on equal terms and conditions with sighted users. The NYCHRL must be construed broadly in favor of discrimination plaintiffs, to the extent that such construction is reasonably possible. Albunio v. City of New York, 16 N.Y.3d 472 (2011).

70. As a direct and proximate result of Defendant's violations of the NYCHRL, Plaintiff has suffered and continues to suffer harm. Plaintiff is entitled to compensatory damages, punitive damages, injunctive relief, attorneys' fees, costs, and all other relief available under the NYCHRL.

## FIFTH CAUSE OF ACTION
**Declaratory Relief**
**28 U.S.C. §§ 2201-2202**

71. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

72. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and Defendant disputes, that Defendant's Website fails to comply with applicable federal, state, and city disability rights laws, including Title III of the ADA, the NYSHRL, the NYCRL, and the NYCHRL, insofar as the Website is inaccessible to blind and visually impaired persons who rely on screen-reading software.

73. Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiff is entitled to a declaratory judgment that Defendant's Website violates Title III of the ADA, the NYSHRL, the NYCRL, and

the NYCHRL, and that Defendant is required to take all steps necessary to bring the Website into full compliance with these statutes and with WCAG 2.1 Level AA, so as to make the Website fully and equally accessible to, and independently usable by, blind and visually impaired individuals who use screen-reading software.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DARREN CESARIO, individually and on behalf of all others similarly situated, respectfully demands judgment against Defendant US HEALTH AND WELLBEING, LLC d/b/a LIQUID I.V. and WELLBEING COLLECTIVE, as follows:

A. A declaration that Defendant's Website, www.liquid-iv.com, violates Title III of the ADA, 42 U.S.C. §§ 12181 et seq.; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq.; the New York Civil Rights Law, N.Y. Civ. Rights Law §§ 40 et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq.;

B. A permanent injunction requiring Defendant to take all steps necessary to bring its Website into full compliance with the requirements of the ADA, the NYSHRL, the NYCRL, and the NYCHRL, and with WCAG 2.1 Level AA, including remediating all identified accessibility barriers, implementing an ongoing accessibility policy, and conducting periodic accessibility audits;

C. A permanent injunction requiring Defendant to retain a qualified accessibility consultant to assist in bringing the Website into compliance and to ensure ongoing maintenance of the Website in an accessible condition;

D. Compensatory damages suffered by Plaintiff and members of the proposed class as a result of Defendant's violations of the NYSHRL, the NYCRL, and the NYCHRL, in an amount to be determined at trial;

E. Statutory damages and civil penalties available under the NYCRL, N.Y. Civ. Rights Law § 40-d, and the NYCHRL, N.Y.C. Admin. Code § 8-502;

F. Punitive damages as permitted by law, including under the NYCHRL;

G. Reasonable attorneys' fees, litigation costs, and expenses pursuant to 42 U.S.C. § 12205, N.Y. Exec. Law § 297(10), N.Y.C. Admin. Code § 8-502(f), and other applicable law;

H. Pre-judgment and post-judgment interest at the maximum rate permitted by law; and

I. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
May 1, 2026

Respectfully submitted
JOSEPH & NORINSBIERG
By: */s/ Robert L. Schonfeld*
Robert L. Schonfeld, Esq
Attorney for Plaintiff DARREN CESARIO
and the proposed class
825 Third Avenue
New York, New York 10022
(212) 227-5700
rschonfeld@employeejustice.com